UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUI LI,

                              Plaintiff,

                    -v.-

CHINA MERCHANTS BANK CO., LTD.,
and KANG PAN,

                              Defendants.

---

22 Civ. 9309 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Hui Li ("Plaintiff") brings this action against Defendants China Merchants Bank Co., Ltd. ("CMB" or the "Bank") and Kang Pan ("Pan") (collectively, "Defendants"), her former employer and supervisor, respectively, alleging that she was discriminated against on the basis of her age, gender, and citizenship, and then retaliated against for raising complaints of discrimination.  What makes this case unusual is that it is not the first employment-related litigation that Plaintiff has brought against CMB.  Precisely for this reason, Defendants seek partial dismissal of Plaintiff's Amended Complaint.  Specifically, Defendants move to dismiss (i) Plaintiff's claims for retaliation, brought under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 (the "FMLA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-134 (the "NYCHRL"), as barred under the doctrine of *res judicata*; and (ii) Plaintiff's claims for age discrimination, brought under the NYSHRL and the NYCHRL, for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).[1]  For the reasons that follow, the Court denies Defendants' partial motion.

**BACKGROUND**[2]

**A. Factual Background**

**1. The Parties**

Plaintiff is an American citizen and woman over the age of 40 years.  (AC ¶ 88).  Plaintiff was employed by CMB from 2012 to 2020.  (*Id.* ¶¶ 19, 124).  She most recently worked as a Deputy Head of the Legal and Compliance Department prior to her termination in August 2020.  (*Id.* ¶¶ 112, 124).

Defendant CMB is an international Chinese bank, headquartered in Futian District, Shenzhen, Guangdong, China (the "Head Office").  (AC ¶ 15).  CMB is one of the largest banks in China, with approximately 500 branches.  (*Id.*).  CMB also has a branch in New York, New York ("CMBNY"), which is the location where Plaintiff was employed.  (*Id.*).

---

[1]    Plaintiff's claims that she was discriminated against on the basis of her gender and citizenship are not at issue in Defendants' motion and, therefore, are discussed only to the extent necessary to resolve the motion.

[2]    This Opinion draws its facts from the Amended Complaint ("AC" (Dkt. #27)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain exhibits attached to the Declaration of David Wirtz (Dkt. #59), including Plaintiff's complaint filed in New York State Supreme Court, New York County (the "State Court Complaint" or "SCC" (Dkt. #59-1)), and the Decision and Order on Motion for Summary Judgment, *Li* v. *China Merchants Bank Co., Ltd.*, Index No. 655394/2020 (N.Y. Sup. Ct. Aug. 18, 2022), NYSCEF Doc. No. 92. (Dkt. #59-2).  The Court also relies on certain exhibits attached to the Declaration of David E. Gottlieb ("Gottlieb Decl., Ex. []" (Dkt. #68)).  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #57); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #67); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #70).

Defendant Pan is employed by CMBNY as its General Manager and had "direct authority over the terms and conditions of Plaintiff's employment" during this time period.  (AC ¶ 16).

### 2.  Plaintiff's Employment at CMBNY

Plaintiff graduated with a Master of Business Administration ("MBA") degree from Pennsylvania State University in 2004, and, after working elsewhere for several years, was recruited in 2012 to work for CMB at its Head Office.  (AC ¶¶ 18-19).  After working at the Head Office for approximately one year, Plaintiff returned to the United States and transferred to CMBNY's office in New York City.  (*Id.* ¶ 21).  Plaintiff received promotions (ultimately ascending to Head of the General Office Department), salary increases, and positive employment reviews through 2018 under the aegis of her former General Manager, Chengyue Jiao.  (*Id.* ¶¶ 19-20, 22-24, 26-27, 93).  In her role as Head of the General Office Department, Plaintiff was asked to attend meetings with CMBNY's Executive Committee, thereby affording her visibility into the Bank's strategic decisions.  (*Id.* ¶ 31).

Plaintiff alleges that, throughout this time, she consistently received high praise and strong ratings in her employee performance reviews.  (AC ¶¶ 32-33).  Indeed, in 2018, Plaintiff was honored at CMBNY's 10th Anniversary Celebration for being among the nearly 10% of Bank's employees to have received A-ratings in their performance reviews for at least three consecutive years.  (*Id.* ¶¶ 32, 34-35).

### 3.    Plaintiff's Age Discrimination Allegations

In 2019, Plaintiff began reporting to Pan, who replaced Jiao.  (AC ¶ 93). Almost immediately, Plaintiff was subjected to, and observed, an array of discriminatory conduct at the hand of Pan and other CMBNY leadership, including sexual harassment and mistreatment on the account of her gender, age, and citizenship.  (*See generally* AC).

As relevant to the instant motion, Plaintiff asserts that age discrimination is one form of discrimination that permeates CMB.  (AC ¶ 62).  In support, Plaintiff offers the following examples:

- CMB's written Human Resources policies required that, for leadership positions below the rank of Assistant Department Head, men over the age of 55 years old and women over the age of 50 years old must be transferred to a "non-leadership position."  (AC ¶ 63).

- CMB's Human Resources Department emphasized the need to "adhere to … promoting young cadres."  (AC ¶ 64).

- At a 2018 town hall meeting that Plaintiff attended, Huiyu Tian ("Tian"), the former President of CMB, emphasized that the Bank "should let young people" dictate the future of the Bank.  (AC ¶¶ 5, 65).

- In a document entitled "A Letter to the Young Staff of the Bank," Tian reiterated his preference for "younger employees" and wrote that the Bank "attaches more importance to the voice of young people than ever before."  (AC ¶ 66).

- CMBNY made complaints about the Head Office's decision to transfer a woman around 40 years of age to CMBNY's Private Banking Department because this employee was "underperforming compared with younger account managers."  (AC ¶ 71 (internal quotation marks omitted)).

What is more, Plaintiff asserts that she personally was subjected to age discrimination. Among other allegations, Plaintiff contends that she was effectively replaced as the Head of the General Office Department by an under-40 male employee, Harry Hu, despite him lacking relevant experience for the position. (AC ¶ 70). Plaintiff also claims that, under Pan's direction, she was demoted, forced to take a cut in salary, and subjected to demeaning tasks in an effort to undermine her reputation and authority. (*See, e.g.*, *id.* ¶¶ 96, 99, 101, 116).

In 2019, Plaintiff began to complain to Pan about her mistreatment, and in early 2020, she formally requested that he change his behavior or transfer her to another department. (AC ¶¶ 106-107). After and as a result of that conversation, Plaintiff began experiencing several negative changes in her position at the Bank. For example, following her complaint to Pan, Plaintiff received the lowest performance rating of her career and her annual bonus was nearly halved. (*Id.* ¶¶ 108-109).

### 4. The Mediation and Plaintiff's Termination

In March 2020, Plaintiff retained counsel, who subsequently sent CMB a demand letter indicating that Plaintiff might file a lawsuit. (AC ¶ 119). In an attempt to avoid litigation, CMB agreed to engage in private mediation in July 2020. (*Id.* ¶ 120). Plaintiff and CMB subsequently engaged in a two-month-long mediation, through which process, the Bank agreed to pay Plaintiff a "sum of money" in exchange for her resignation and the release of any putative

claims against CMB and its employees (the "Settlement Agreement").  (*Id.*
¶ 121).

Following mediation, CMB allegedly reneged on its obligations under the
Settlement Agreement.  (AC ¶ 122).  Subsequently, Plaintiff sought leave from
CMB under the FMLA, because "the Bank's conduct had caused her to suffer
from extreme anxiety and depression."  (*Id.* ¶ 123).  CMBNY responded to
Plaintiff's request by terminating her employment on August 23, 2020.  (*Id.*
¶ 124).

### 5.    The State Court Litigation

On October 23, 2020, Plaintiff filed a complaint against CMB in New York
State Supreme Court, New York County (the "State Court Litigation"), alleging
that CMB had reneged on its commitment under the Settlement Agreement and
that Plaintiff had relied on the promise of the Settlement Agreement's payout.
(SCC ¶¶ 39, 43).  Pan was not a party to the State Court Litigation.

In the State Court Complaint, Plaintiff brought two causes of action
against CMB.  (*See generally* SCC).  The first cause of action was breach of
contract, whereby Plaintiff alleged that the Settlement Agreement constituted a
"valid, binding[,] and enforceable contract" and that CMB had not followed
through on its obligations, namely to pay Plaintiff in exchange for her signing a
release.  (*Id.* ¶¶ 34-40).  The second cause of action was promissory estoppel,
whereby Plaintiff alleged that she had "reasonably relied on [CMB's] promises
by … agreeing to release all of her claims, by deleting all of the documents and
information that she maintained during her employment[,] and by agreeing to

keep her claims against CMB and its employees confidential." (*Id.* ¶¶ 41-45). Rather than taking discovery, the parties submitted a joint stipulation of uncontested facts to the state court and moved for summary judgment. (Decision and Order on Motion for Summary Judgment at 2-7).

On April 21, 2022, the court held an oral argument on the parties' motions. (*See* Gottlieb Decl., Ex. B). At the hearing, Justice Joel M. Cohen asked CMB's counsel, Adriana Forman, Esq., whether there was any reason Plaintiff would be prevented from pursuing claims against the Bank for discrimination if the state court action were to be dismissed. (*Id.* at 27:7-28:1). In response, Ms. Forman affirmed that there was not and that, because Plaintiff was "not bound by any [settlement] agreement," she was "free to disparage the bank and even bring her claim against the bank if she so cho[se]." (*Id.* at 41:16-42:5).

On August 18, 2022, Justice Cohen granted CMB's motion for summary judgment, thereby denying Plaintiff's cross-motion for summary judgment and dismissing Plaintiff's case. (Decision and Order on Motion for Summary Judgment at 15). Specifically, the court found that the Settlement Agreement was not binding on the parties because "plaintiff's signature on [the settlement agreement] to which her lawyer had previously communicated a counteroffer was ineffective to create a binding agreement," and, therefore, CMB could not have breached its obligations thereunder. (*Id.* at 2, 8, 13).

**B.      The Instant Litigation**

On October 31, 2022, Plaintiff filed a complaint in this Court, alleging that Defendants had discriminated against her on the basis of her gender, age, and citizenship, as well as retaliated against her.  (Dkt. #1).  On November 30, 2022, Defendants filed a motion to strike certain provisions of the Complaint that were immaterial to Plaintiff's alleged injuries, primarily requesting the Court strike (i) allegations relating to a separate action filed against the Bank by a former employee, (ii) allegations of employee misconduct separate from the alleged discrimination against Plaintiff, and (iii) allegations relating to statements made during mediation.  (Dkt. #13-14).  Plaintiff opposed Defendants' motion, arguing that the allegations were relevant to her claims. (Dkt. #18).  On January 6, 2023, the Court granted in part and denied in part Defendants' motion to strike and directed Plaintiff to file an amended complaint in compliance with the Court's order by January 13, 2023.  (Dkt. #19 ("January 2023 Order")).

On January 23, 2023, Plaintiff filed a motion for reconsideration of the Court's January 2023 Order, requesting that the Court reconsider striking the allegations relating to statements made during mediation.  (Dkt. #22-23). Defendants submitted a brief in opposition on February 6, 2023.  (Dkt. #24). On April 14, 2023, the Court granted Plaintiff's motion for reconsideration, thereby allowing Plaintiff's allegations concerning statements made during mediation to be included in an amended complaint.  (Dkt. #26).  The Court

modified its January 2023 Order and directed Plaintiff to file an amended complaint based on the new modifications. (*Id.*).

On May 5, 2023, Plaintiff filed her Amended Complaint, which is the operative complaint in this action. (Dkt. #27). Shortly thereafter, Defendants filed a letter requesting leave to file a partial motion to dismiss the Amended Complaint. (Dkt. #28). The Court held a conference to discuss Defendants' contemplated partial motion on June 27, 2023. (*See* June 27, 2023 Minute Entry).

Following the conference, on July 13, 2023, the parties filed a letter requesting referral to a Magistrate Judge for settlement negotiations and indicating that, if negotiations proved unsuccessful, Defendants would file their partial motion to dismiss. (Dkt. #38). The Court consequently referred the parties to Magistrate Judge Valerie Figueredo for settlement (Dkt. #40), and a settlement conference was held on December 7, 2023 (*see* December 7, 2023 Minute Entry). On December 21, 2023, the parties informed the Court that settlement negotiations had been unsuccessful and proposed a briefing schedule for Defendants' motion to dismiss, which schedule the Court endorsed. (Dkt. #47-48). In light of the anticipated motion, the Court stayed discovery as to Plaintiff's retaliation claims, as those claims were the subject of motion practice and potentially implicated the witness-advocate rule. (Dkt. #52).

In accordance with the briefing schedule, on January 25, 2024, Defendants filed their memorandum of law in support of their partial motion to

dismiss.  (Dkt. #57).  Shortly thereafter, on February 2, 2024, the parties jointly wrote to the Court to identify certain discovery disputes and informed the Court of certain difficulties with bifurcating discovery, as discovery on Plaintiff's retaliation claims appeared to implicate as well her discrimination claims.  (Dkt. #61).  In response, the Court stayed all discovery pending the resolution of Defendants' partial motion to dismiss.  (Dkt. #62).

On February 23, 2024, Plaintiff filed her brief in opposition to Defendants' partial motion to dismiss.  (Dkt. #67).  On March 8, 2024, Defendants filed their reply brief in further support of dismissal.  (Dkt. #70).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [p]laintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotations marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation and internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. *Res Judicata*

To determine the preclusive effect of a state court decision on claims or issues, a federal court will look to the law of the state that rendered the decision. *See Anderson News, LLC* v. *Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state and should not give the state-court decision any greater preclusive effect than the courts of that

state would give it[.]"); *see also Owens* v. *Treder*, 873 F.2d 604, 607 (2d Cir. 1989) ("The federal court must ... apply the collateral estoppel rules of the state which rendered the judgment."); *see generally Whitfield* v. *City of New York*, 96 F.4th 504, 522 (2d Cir. 2024) ("The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (citation omitted)). "[B]ecause the preclusive effect of a New York state court decision is asserted, the Court must consider New York's law of *res judicata*." *Logan* v. *Matveevskii*, 175 F. Supp. 3d 209, 233 (S.D.N.Y. 2016) (citation omitted).

Under New York law, the doctrine of *res judicata*, or claim preclusion, dictates that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre* v. *Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981)); *accord Simmons* v. *Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021). "[O]nce a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose." *Maharaj* v. *Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also In re Hunter*, 4 N.Y.3d 260, 269 (2005) ("[A] party may not

litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.").

Specifically, *res judicata* bars successive litigation if: (i) "there is a judgment on the merits rendered by a court of competent jurisdiction"; (ii) "the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was"; and (iii) the successive litigation is based upon the "same transaction or series of connected transactions" as the previous action. *People ex rel. Spitzer* v. *Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (citations omitted). New York takes a transactional approach to *res judicata*, pursuant to which "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Josey* v. *Goord*, 9 N.Y.3d 386, 389-90 (2007) (quoting *O'Brien* v. *City of Syracuse*, 54 N.Y.2d 353 357 (1981)).

### 3. Age Discrimination Under the NYCHRL and the NYSHRL

The NYCHRL makes it "an unlawful discriminatory practice ... [f]or an employer or an employee ..., because of the actual or perceived age ... of any person ... [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). Claims under the NYCHRL "are governed by a more permissive standard" than claims asserted under the Age Discrimination in Employment Act (the "ADEA"). *McLeod* v. *Gen. Vision Servs., Inc.*, No. 13 Civ. 6824 (VSB), 2018 WL 3745662, at *7 (S.D.N.Y. Aug. 6, 2018). To survive a motion to dismiss, a plaintiff need

not allege that they suffered an adverse employment action or that
"discriminatory animus was the but-for cause or even the primary motivation
of their alleged mistreatment." *Delo* v. *Paul Taylor Dance Found., Inc.*, 685 F.
Supp. 3d 173, 183 (S.D.N.Y. 2023).  Rather, they must allege only that they
have been "treated less well at least in part because of" their age.  *Id.* (quotation
marks omitted) (quoting *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715
F.3d 102, 110 (2d Cir. 2013)).

A plaintiff must allege "differential treatment that is 'more than trivial,
insubstantial, or petty.'" *Torre* v. *Charter Comm'cns, Inc.*, 493 F. Supp. 3d 276,
285 (S.D.N.Y. 2020) (quoting *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509,
530 (S.D.N.Y. 2015)); *accord Shaughnessy* v. *Scotiabank*, No. 22 Civ. 10870
(LAP), 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024).  In addition, a
plaintiff must also allege that her age "was one of the motivating factors, even if
it was not the sole motivating factor, for" her unequal treatment.  *Melman* v.
*Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012); *see also Gittens-
Bridges* v. *City of New York*, No. 22-810, 2023 WL 8825342, at *2 (2d Cir.
Dec. 21, 2023) (collecting cases).

The NYSHRL similarly states that "[i]t shall be an unlawful
discriminatory practice ... [f]or an employer ..., because of an individual's
age, ... to discriminate against such individual in compensation or in terms,
conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).
Previously, "discrimination claims under the NYSHRL and Title VII were
generally treated as analytically identical, and addressed together."  *Edelman* v.

*NYU Langone Health Sys.*, No. 21 Civ. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (quotation marks omitted); *see also Shaughnessy*, 2024 WL 1350083, at *10-11 (observing the same for claims arising under the ADEA).  In 2019, however, the NYSHRL was amended to provide that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."  N.Y. Exec. Law § 300.  In doing so, this amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL."  *Livingston* v. *City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see Charles* v. *City of New York*, No. 21 Civ. 5567 (JPC), 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering plaintiff's NYCHRL and NYSHRL claims together).

"The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law."  *Wheeler* v. *Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023); *compare Arazi* v. *Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendment brings NYSHRL "closer to" NYCHRL standard).  For

the purposes of this motion, however, the Court will assume *arguendo* that the amended NYSHRL aligns with the NYCHRL, as the parties analyze Plaintiff's state and city claims under the same legal standard.

**B.    Analysis**

Defendants seek to dismiss Plaintiff's claims for retaliation (Counts II, III, V, and VII) under the doctrine of *res judicata* and Plaintiff's claims of age discrimination (Counts IV and VI) under Rule 12(b)(6).  (*See generally* Def. Br.). The Court addresses each argument in turn.

### 1.    Plaintiff's Retaliation Claims Are Not Barred by *Res Judicata*[3]

### a.    Defendants Did Not Waive Their Right to Raise *Res Judicata* as an Affirmative Defense

Before reaching the merits of Defendants' arguments, Plaintiff presses the Court to consider the question of whether Defendants waived their right to raise *res judicata* as a defense to Plaintiff's claims.  Specifically, Plaintiff asserts that defense counsel's statements before Justice Cohen in the State Court Litigation — that Plaintiff was "free" to bring her claims against the Bank if her motion for summary judgment was denied — precludes Defendants from raising such a defense in subsequent litigation.  (Pl. Opp. 6-7).

"[T]he question of waiver is a 'purely procedural question of what issues must be raised, and when, in a federal lawsuit.'"  *Richardson* v. *Manhattan*

---

[3]    Because the elements of *res judicata* and their application are "largely the same" between federal and New York law, the Court considers cases within the Circuit that apply federal law as persuasive, in addition to those that apply New York state law as binding.  *See Weir* v. *Montefiore Med. Ctr.*, No. 23 Civ. 4468 (KPF), 2023 WL 5747642, at *5 (S.D.N.Y. Sept. 6, 2023).

*Transit Auth. N.Y.C. Headquarters*, No. 16 Civ. 1304 (JMF), 2019 WL 4256355, at *2 (S.D.N.Y. Sept. 9, 2019) (quoting *Manicki* v. *Zeilmann*, 443 F.3d 922, 927 (7th Cir. 2006)).  Thus, although the "substantive question of preclusion is governed by New York state law," the question of waiver here "is governed by federal, not state, law."  *Id.*  "[U]nder federal law, a defendant waives the defense of *res judicata* only if it fails to timely assert the defense in its answer or pre-answer motion."  *Id.* (citing Fed. R. Civ. P. 8(c)).

Here, Defendants timely asserted the defense in their motion to dismiss. *See Cowan* v. *Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 73 (S.D.N.Y. 2001) ("[A] party that does not raise an affirmative defense of *res judicata* in responsive pleadings waives the right to assert the defense."); *see also Wimbledon Fin. Master Fund Ltd.* v. *Bienert Miller & Katzman, PLC*, 619 F. Supp. 3d 351, 367 (S.D.N.Y. 2022) ("[T]he defense of *res judicata* ... may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment." (citation omitted)).  Thus, Defendants did not waive the defense, and Plaintiff's argument fails.

Even assuming *arguendo* that specific language evidencing an intent to waive the assertion of *res judicata* could constitute waiver under federal law, it would not apply here.  Read in context, Defendants' statement concerned Plaintiff's ability to bring her *discrimination* claims, which Defendants do not contest on *res judicata* grounds.  More to the point, even under the most charitable reading, Defendants' remarks do not constitute an enforceable agreement between the parties under which they waived the *res judicata*

defense.  *Cf. Nexbank, SSB* v. *Soffer*, 11 N.Y.S.3d 135, 136 (1st Dep't 2015) ("By explicitly agreeing in the guaranty [of a loan agreement] that … the only defense to their obligations thereunder would be the full and final payment and satisfaction of their guaranteed obligations … defendants waived the defense of *res judicata*.").

### b. Defendants Fail to Satisfy the Elements of *Res Judicata*

Having determined that Defendants' motion is not barred by the above-described threshold consideration, the Court now turns to the merits of Defendants' *res judicata* arguments.  In particular, Defendants assert that Plaintiff's retaliation claims are barred because Plaintiff could have pleaded her retaliation claims in the State Court Litigation but opted not to do so.  (Def. Br. 6-9).  To review, a claim is barred under *res judicata* if (i) the previous action involved an adjudication on the merits; (ii) the previous action involved the plaintiffs or those in privity with them; and (iii) the claims asserted in the subsequent action are based upon the same transaction or series of connected transactions raised in the prior action.  *People ex rel. Spitzer*, 11 N.Y.3d at 122.

As an initial matter, the first two elements of this standard are satisfied. *First*, the granting of CMB's motion for summary judgment in the State Court Litigation constituted an adjudication on the merits, by a court of competent jurisdiction.  (*See generally* Decision and Order on Motion for Summary Judgment at 13 (dismissing Plaintiff's breach of contract and promissory estoppel claims because no settlement "was reached")).  *See Noor* v. *Mahmood*, 118 N.Y.S.3d 429, 430 (1st Dep't 2022) ("An order granting a motion for

summary judgment is made on the merits and has preclusive effect." (citing *Collins* v. *Bertram Yacht Corp.*, 42 N.Y.2d 1033, 1034 (1977)); *see also DeCastro* v. *City of New York*, 278 F. Supp. 3d 753, 764 (S.D.N.Y. 2017) ("For purposes of issue or claim preclusion, summary judgment is considered a decision on the merits."); *Yan Won Liao* v. *Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) ("Summary judgment dismissal is considered a decision on the merits for *res judicata* purposes."); *Amadsau* v. *Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (concluding that a grant of summary judgment operated as decision on the merits), *aff'd*, 225 F. App'x 32 (2d Cir. 2007) (summary order).

*Second*, both actions involve the same parties or their privies. It is undisputed that Plaintiff and CMB were parties in both actions (*see* Def. Br. 6; Pl. Opp. 8 n.3), and that Pan's interests were represented by his employer — CMB — in the previous action. *See Bayer* v. *City of New York*, 983 N.Y.S.2d 61, 63 (2d Dep't 2014) ("[P]ersons in privity include those whose interests are represented by a party to the previous action and those '[whose] own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" (citing *D'Arata* v. *N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (1990)); *see, e.g.*, *Davis* v. *Metro N. Commuter R.R.*, No. 21 Civ. 387 (ER) (BCM), 2022 WL 2223018, at *2, 6 (S.D.N.Y. June 21, 2022) (concluding that the Metro-North's Vice President of Labor Relations and Deputy Chief of Field Operations were in

privity with Metro-North for the purpose of *res judicata* because they were
"employees of Metro-North").

Nevertheless, Defendants fail to satisfy the final element of *res judicata* —
that the successive litigation is "based upon the same transaction or series of
connected transactions" as the previous action. *People ex rel. Spitzer*, 11
N.Y.3d at 122. To determine whether the claims in two proceedings involve the
same transaction or series of transactions, courts employ "a 'pragmatic test
analyzing whether the facts are related in time, space, origin, or motivation,
whether they form a convenient trial unit, and whether their treatment as a
unit conforms to the parties' expectations[.]'" *Jeda Capital-56, LLC* v. *Potsdam
Assocs., LLC*, 206 N.Y.S.3d 795, 798 (3d Dep't 2024) (quoting *O'Connor* v.
*Demarest*, 902 N.Y.S.2d 714, 716 (3d Dep't 2010)); *see also Beijing Neu Cloud
Oriental Sys. Tech. Co., Ltd.* v. *Int'l Bus. Mach. Corp.*, — F.4th —, 2024 WL
3529080, at *4 (2d Cir. July 25, 2024) (relying on the same transaction
analysis for determining whether *res judicata* applies under New York law).
Separately asserted legal theories that "depend on different shadings of the
facts" or that "emphasize different elements of the facts" may still arise out of
the same transaction or series of transactions if those legal theories are
"grounded on the same gravamen of the wrong upon which the action[s] [are]
brought." *Smith* v. *Russell Sage Coll.*, 54 N.Y.2d 185, 192 (1981) (citation
omitted); *see also O'Brien* v. *City of Syracuse*, 54 N.Y.2d 353, 357-58 (1981)
("When alternative theories are available to recover what is essentially the same
relief for harm arising out of the same or related facts such as would constitute

20

a single 'factual grouping' … the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." (internal citation omitted)).

In the instant litigation, Plaintiff seeks to hold Defendants liable for retaliatory conduct during her employment and, ultimately, her termination, under federal, state, and local anti-discrimination statutes.  (*See, e.g.*, AC ¶¶ 107-109 (alleging that after she complained to Pan about the discrimination, Plaintiff "received the lowest performance rating of her career"), 110-114 (alleging that Plaintiff was transferred and demoted as a result of her complaints to Pan), 123-124 (alleging that CMBNY responded to Plaintiff's request for leave under the FMLA "by abruptly terminating [her] employment")). In contrast, the State Court Litigation, wherein Plaintiff asserted claims for breach of contract and promissory estoppel claims, arose exclusively out of the parties' participation and conduct in a private mediation and subsequent negotiations over a two-month period of time.  (*See, e.g.*, SCC ¶¶ 34-40 (alleging the Settlement Agreement was a "valid, binding[,] and enforceable contract," which CMB breached), 41-45 (alleging Plaintiff relied on CMB's provide to pay her the Settlement Payment in exchange for her release of all of her claims)).  In considering whether the Settlement Agreement was an enforceable contract, Justice Cohen held that, despite "extensive negotiation," because Plaintiff's attorney had previously countered CMB's final draft with "several substantive modifications," Plaintiff's purported acceptance of the final offer was "ineffective."  (Decision and Order on Motion for Summary Judgment

at 1-2).  The court's decision did not rely on, or even reference, Defendants'

allegedly discriminatory or retaliatory interactions with Plaintiff.  Indeed, the

only relation between the two actions is that the subject matter of the

Settlement Agreement concerned the release of Plaintiff's putative claims.[4]

Accordingly, the claims raised in the instant litigation are not "grounded

on the same gravamen of the wrong" upon which Plaintiff's state court action

was brought.  *Cf. Beijing Neu Cloud Oriental Sys.*, 2024 WL 3529080, at *5, 7

(finding plaintiff's claims arose out of the same transaction or series of

transactions, in part, because they both alleged the "same injury" based on the

"same series of events" and "the complaints rely on nearly identical

allegations"); *see also Yeiser* v. *GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422

(S.D.N.Y. 2008) (finding plaintiffs' actions were based the same series of

transactions, in part, because "the same facts and incidents" were asserted).[5]

---

[4]    Defendants' contention that, because the Amended Complaint refers to the parties' mediation in the section regarding retaliation, Plaintiff's retaliation claims are somehow "br[ought] … into the scope of *res judicata*" is unavailing.  (Def. Br. 4-5).  Plaintiff's retaliation claims primarily concern her years of employment at the Bank, which pre-date even her retention of counsel.  Further, the Amended Complaint, on its face, does not allege that Plaintiff was terminated for reasons related to the State Court Ligation.  (*See* AC ¶¶ 123-124 (alleging CMBNY "responded" to Plaintiff's request for leave under the FMLA by "abruptly terminating" her)).  Thus, Defendants' assertion that "the essential fact" of Plaintiff's retaliation claims "is whether Defendants' conduct during the mediation and settlement negotiations demonstrated a retaliatory motive" is belied by a plain reading of the record.  (Def. Reply 3).  *See Proctor* v. *LeClaire*, 715 F.3d 402, 412 (2d Cir. 2013) ("The fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second."); *see also Medcalf* v. *Thompson Hine LLP*, 84 F. Supp. 3d 313, 325 (S.D.N.Y. 2015) (denying motion to dismiss plaintiff's claims as precluded because, although there was "undoubtedly some factual overlap between [p]laintiff's first and second actions," the instant case "presented claims that … necess[arily] require[d] consideration of facts beyond those that formed the basis of the [prior action]").

[5]    While it is true that under New York law, two claims need not rely upon the same legal theory or seek the same type of relief for the second claim to be barred under *res judicata, see Ray Legal Consulting Group* v. *Gray*, 37 F. Supp. 689, 703 (S.D.N.Y.

Despite acknowledging that this case presents a "unique" factual scenario (Def. Reply 8), Defendants nevertheless insist that Plaintiff's retaliation claims are barred because they "could have been asserted" in the alternative to her claims for breach of contract (*id.* at 5). As the Second Circuit recently re-affirmed, "New York courts use a 'transactional analysis approach' to determine whether a claim 'could have been raised in the prior litigation.'" *Beijing Neu Cloud Oriental Sys.*, 2024 WL 3529080, at *4 (quoting *In re Hunter*, 4 N.Y.3d at 269). Defendants' argument, therefore, fails to persuade here, because the actions did not arise out of the same transactions. (*Compare* SCC (arising out of facts and events related to the parties' conduct during mediation), *with* AC (arising out of facts and events related to the Plaintiff's employment and termination)). *Cf. Maharaj*, 128 F.3d at 97 ("In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. Rather, the first judgment will preclude a second suit *only* when it involves the same 'transaction' or connected series of transactions as the earlier suit." (emphasis added)); *see also Nevada* v. *United States*, 463 U.S. 110, 128-30 (1983) (requiring courts to first decide whether the "same cause of action" is being

---

2014) (citing *Berrios* v. *N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009)), for prelusion to apply, those claims must still "aris[] out of the same factual grouping as [the] earlier litigated claim," *Corbett* v. *City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020) (summary order) (internal citations omitted). Had Plaintiff alleged in the prior action, for example, that CMB had breached her employment contract via her termination, her retaliation claims stemming from her termination would indeed be precluded, as those claims (albeit based on a different legal theory) would arise out of the same factual grouping.

sued upon). Indeed, it would confound logic and fairness if a discrimination claimant were barred from pursuing her underlying claims after first trying to hold her employer liable for enforcement of a settlement agreement, simply because, temporally, the events that gave rise to her underlying claims had already transpired.

In sum, because the Court finds that Plaintiff's claims in the State Court Litigation and the retaliation claims now before it do not arise out of the "same factual grouping," the third element of *res judicata* is not satisfied. *Corbett*, 816 F. App'x at 553. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claims for retaliation.

### 2. The Court Denies Defendants' Motion to Dismiss Plaintiff's Age Discrimination Claims

The Court next turns to Plaintiff's age discrimination claims brought under state (Count IV) and city law (Count VI). Plaintiff alleges, *inter alia*, that she was subject to age discrimination when she was harassed and mistreated at the Bank, including instances in which Pan "marginaliz[ed] her, demot[ed] her[,] and slash[ed] her compensation in favor of a much younger and less qualified man." (Pl. Opp. 16).

To plead a plausible age discrimination claim, Plaintiff must allege that she was "treated less well at least in part because of [her] age." *Doolittle* v. *Bloomberg L.P.*, No. 22 Civ. 9136 (JLR), 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023) (citation omitted). Plaintiff must also allege that her age was "one of the motivating factors, even if it was not the sole motivating factor for her unequal treatment." *Id.* (citation omitted).

24

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that this standard is satisfied. Plaintiff has alleged: (i) the fact that a younger person was promoted to effectively replace her (*see, e.g.*, AC ¶ 70 (alleging that, in 2020, Hu, a male employee younger than 40 years old, was promoted over her, surpassing at least three employment "levels" in the process despite lacking relevant experience for the position)); (ii) specific information about why she was more qualified than he (*see, e.g.*, *id.* ¶¶ 17-18, (describing Plaintiff's professional background, including a graduate degree in business and nearly 20 years of professional experience, approximately eight of which she spent working for the Bank in different leadership positions)); (iii) specific ways in which she was excluded in favor of a younger colleague (*see, e.g.*, *id.* ¶ 96 (alleging that, when Hu first joined the General Office Department, Plaintiff was informed that she was no longer permitted to attend Executive Committee meetings and that Hu would attend in her stead)); (iv) specific instances where she was given demeaning tasks relative to her own qualifications and the qualifications of her younger colleagues (*see, e.g.*, *id.* ¶¶ 98 (alleging Pan told Plaintiff that he preferred Plaintiff to "serve[] guests coffee and tea" rather than Hu, who was at that time more junior to her), 99 (alleging Pan berated Plaintiff in front of other employees for not cleaning the conference room before clients arrived)); and (v) specific statements indicative of ageist motives made by Pan (*see, e.g.*, *id.* ¶ 68 (alleging Pan "boasted" about his efforts to transition the New

York office into a "very young team")).[6]  These allegations, accepted as true at

this stage of the litigation, sufficiently allege that Plaintiff was treated "less

well" due to her age.  *Wheeler*, 694 F. Supp. 3d at 451 (citation omitted).[7]

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's

age discrimination claims, and allows the claims to proceed alongside her

claims for discrimination on the basis of her gender and citizenship.  *See, e.g.*,

*Lebowitz* v. *N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 174 (E.D.N.Y. 2017)

(denying motion to dismiss where plaintiff alleged that teachers over 40 years

of age were treated differently than younger teachers, coupled with remarks

potentially indicative of age discrimination); *see also Mulvaney* v. *City of*

*Rochester*, No. 18 Civ. 6367 (MAT), 2019 WL 2250014, at *4 (W.D.N.Y. May 22,

---

[6]    Defendants assert that, because "Pan is considerably older than Plaintiff," it "diminish[es] if not eliminat[es] any inference of ageism."  (Def. Br. 12).  While courts in this Circuit have suggested that, when employers are close in age or older to the plaintiff, this "weakens any suggestion of age discrimination," *Pisana* v. *Merrill Lynch & Co., Inc.*, No. 93 Civ. 4541 (LMM), 1995 WL 438715, at *5 (E.D.N.Y. July 24, 1995), in the face of the well-pleaded allegations before the Court — and the current pleading stage — the Court finds that this fact falls well short of eliminating "any inference of ageism."  (Def. Br. 12).  *See e.g.*, *Khan* v. *Hilton Hotels Inc.*, No. 13 Civ. 1919 (LTS) (DCF), 2015 WL 10851362, at *3 n.6 (S.D.N.Y. Aug. 3, 2015) ("Defendant argues that, because Wing and Jarka are over the age of 40 and thus members of the same protected class as Plaintiff, age discrimination is unlikely.  Although the ages of the employees involved in Plaintiff's termination are relevant considerations, their membership in the protected group is not sufficient, standing alone, to preclude a genuine issue of fact.").

[7]    Contrary to Defendants' assertions, the fact that Plaintiff's gender and/or national origin may have played a part in the adverse actions against her, does not doom Plaintiff's age discrimination claims.  *See, e.g.*, *Palmer* v. *Cook*, 108 N.Y.S.3d 297, 307 (N.Y. Sup. Ct. Queens Cnty. 2019) ("[T]he plaintiff should prevail in an action under the NYCHRL if he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision." (citing *Melman* v. *Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012)); *cf. Ehrbar* v. *Forest Hills Hosp.*, 131 F. Supp. 3d 5, 20 (E.D.N.Y. 2015) ("That age was a 'but for cause' does not mean that age was the employers only consideration, but rather that the adverse employment action would not have occurred without it." (emphasis omitted) (citing *Delaney* v. *Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014))).

2019) (denying motion to dismiss where plaintiff alleged that he was demoted from his position, had his pay reduced, and was replaced by a younger employee); *Ward* v. *Cohen Media Publications LLC*, No. 22 Civ. 6431 (JLR), 2023 WL 5353342, at *11 (S.D.N.Y. Aug. 21, 2023) (denying motion to dismiss where plaintiff alleged ageist comments and that she was replaced by and paid less than a younger employee).

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' partial motion to dismiss Plaintiff's claims. The Clerk of Court is directed to terminate the pending motion at docket number 56.

The parties are hereby ORDERED to meet and confer and submit a revised case management plan on or before **September 13, 2024**.

SO ORDERED.

Dated:    August 13, 2024
          New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

27