

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY 10022.3298

Margaret L. Watson
212.471.4492 direct
212.583.9600 main
MWatson@littler.com

June 6, 2025

**MEMO ENDORSED**

**VIA ECF**
The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *Li v. China Merchants Bank Co., LTD, et al.*, Case No. 2: 22-cv-9309 (KPF)

Dear Judge Failla:

On behalf of Defendants, we write to respond to Plaintiff's June 3, 2025 letter seeking to compel Defendants to produce certain documents and information (ECF No. 124). Plaintiff's claim that Defendants failed to comply with this Court's Orders is without merit and reveals only Plaintiff's own abuses of the discovery process.

**I.   Defendants are in full compliance with the Court's Order of March 6, 2025**

Defendants have been and continue to be in compliance with this Court's rulings regarding "Other Complaints." On April 8, 2025, Defendants produced approximately 250 pages of documents reflecting complaints raised by various of the identified "other complainants." (China Merchants 0002364-0002614). Defendants further reviewed the Bank's internal HR and investigative files, and on June 2, 2025, made a supplemental production consisting of approximately 670 pages of non-privileged documents reflecting complaints, emails, and exhibits to privileged investigative reports related to the identified complainants. (China Merchants 0002799-0003471). As represented to this Court at the May 19 conference, to the extent Defendants did not find responsive documents in existing files, Defendants are in the process of conducting targeted email searches to retrieve materials associated with the investigations of the complaints, while maintaining privilege with respect to the investigations. Defendants have never withheld names of any firms—indeed, when Plaintiff's counsel requested this information, Defendants provided it with no objection. Plaintiff's baseless claim that she has proof Defendants' efforts have not been reasonable based on some alleged evidence of a draft complaint that she did not previously share, is at best a document that targeted ESI may find. Stated differently, as Defendants informed Plaintiff, the draft complaint she references was not found in any HR file or investigation file, and so if it exists, we must assume that it will be located by a targeted ESI search. Defendants have been and are proceeding diligently to recover the documents relating to these 10 collateral complaints, at least seven of which are more than 6 years old. Although such additional ESI is not

littler.com

due until July 2, as Defendants informed Plaintiff, they will be producing responsive documents on a rolling basis.

In connection with this Court's March 6 ruling, Plaintiff originally informed Defendants that she was issuing subpoena duces tecum to nine individuals (i.e., Minqiang Wu, Xin Wang, Brian Sun, Cynthia Fotheringham, John Hemmann, Majid Geramian, Miao (Marina) Li, Sabrina Wolf, and WenQi (Selina) Liu) requiring a production of documents broader than the Court's order. To date, Plaintiff has confirmed that she subpoenaed Minqiang Wu (via counsel), Xin Wang, and Majid Geramian (via counsel). She has also issued a subpoena ad testificundum to one of the prior complainants, Majid Geramian, and threatened to subpoena others, including Joann Tang, Jacqueline Giraldo, Mu Zhang, and Susan Camus. When Defendants responded that Plaintiff is limited to 10 depositions (absent court approval) and has now reached her limit (given the 9 noticed depositions and the 1 subpoena ad testificundum), Plaintiff responded that third party depositions are not counted in the ten. Defendants disagree. *See* Fed. R. Civ. P. 30(a)(2). Apparently agreeing to the cap of 10, Plaintiff now contends Defendants have a burden to retrieve all files from the third-party firms that investigated each of the "other" complaints. Again, this is not what this Court ordered. Although Defendants are working with some of the third-party investigators to retrieve their files, there are costs associated with same that Defendants believe they are not required to expend. As discussed above, Defendants are able to retrieve from their own ESI, documents that were sent to or received from the third-party investigator and thus, production of files from the third parties' triggers (1) additional privilege review of investigator notes and related materials that were not part of the final report; and (2) copying and compliance charges from those firms. In the limited circumstances where Defendants are not able to retrieve the materials at issue from their own servers, they will obviously incur these costs, but there is simply no basis for Plaintiff to claim that Defendants failure to do so evidences a failure to comply with the Court's Order.

## II. Defendant Kang Pan's Personal Email Data is Not Appropriate Discovery

Throughout discovery, Defendants have appropriately taken the position that Mr. Pan's personal emails are not relevant and we have objected to searching the same. Defendants have offered to provide a declaration from Mr. Pan attesting to the fact that he did not use his personal email account for relevant business-related purposes or to discuss any issues related to this litigation. Defendants are also amenable to doing targeted attorney searches in the account for verification purposes. Plaintiff's claim that Defendants have been less than candid with counsel in discovery regarding these accounts is baseless, and the vague allegation that "we know he used his personal emails during the relevant time frame" is meaningless. As Defendants disclosed, Mr. Pan had two separate personal email accounts which he used for personal reasons but there is no basis to require discovery of same in this litigation. Defendants submit that forcing them to spend several thousand dollars to collect, process, and search data known to be irrelevant is not proportionate or reasonable. To be clear, Mr. Pan's WeChat and text message data was collected for Defendants' discovery response efforts. Defendants reiterate their offer to provide a declaration.

2

### III. WeChat and Text Message Data for Other Custodians

The Parties have conferred extensively over ESI and reached certain compromises in order to meet the agreed extended deadline required from the Court, including Plaintiff's offer to limit searches of WeChat and text message data to five key custodians. At the May 19 conference, Defendants expressly summarized the Parties' agreement: "we have five custodians we agreed on we would be applying" search terms to their WeChat and text message data. May 19, 2025 Tr. at 34. Plaintiff failed to raise any issues with that representation,[1] and it was on this basis that Defendants agreed they could move forward and meet the discovery deadline, and that the anticipated burdens of search and retrieval fell within the proportionate needs of the case. After the fact, Plaintiff sought to add one and then multiple other custodians to the mix. Accordingly, Defendants request that this Court uphold the Parties' agreement and limit discovery from WeChat and text message data to the five custodians—Ms. Guo and Messrs. Friedland, Loffredo, Mao and Pan.

### IV. Defendants' Search Terms for Plaintiff's Electronic Communications Data

On May 15, Plaintiff provided her first, rudimentary reporting of the results of applying search terms that had been proposed by Defendants almost six months earlier, in December 2024. We understand that Plaintiff's delay was due to her counsel originally intending to ignore Defendants' search terms, but deciding to use them after finding their proposed approach was too burdensome. The reporting appeared to relate solely to Plaintiff's personal Gmail account, and it appeared, among other things, that she was limiting her search of text messages to those in "SMS" format. Without explaining how the searches were run (though Defendants requested such information on several occasions), what the reporting meant, or defining column headers, Plaintiff's counsel represented that there were over 30,000 document containing hits, asserted that most of these were "irrelevant, mass, spam and/or marketing emails", and that Plaintiff "did not use email with any level of frequency to communicate with friends, family or colleagues." With only this to go on, Defendants carefully crafted revised searches designed to capture only potentially responsive documents, based on Plaintiff's correspondence with Bank personnel and people not known to Defendants with whom she had relevant communications. As stated, these revised searches were provided to Plaintiff on June 3. This was a heavy lift by Defendants, undertaken with the hope of eliminating "spam" and yielding only a small fraction of the hits reported from the first round. Defendants await Plaintiff's updated report, along with the requested definitions and confirmation of scope that have still not been provided and stand ready to focus any still-excessive results or false hits to ensure the Plaintiff's burden is reasonable and proportionate. However, there has been no unreasonable delay caused by Defendants in this process, and unless Plaintiff had significantly more communications than she has represented, Plaintiff's review burden should be readily manageable, and Defendants expect that Plaintiff should be able to comply with her obligations to produce these documents this month.

Respectfully submitted,

*/s/ Margaret L. Watson*
Margaret L. Watson

---

[1] When this Court asked if there were any other issues that remained open, Plaintiff's counsel stated "Nothing, your Honor." *See* May 19, 2025 Tr. at 58.

The Court has reviewed Plaintiff's letter motion to compel (Dkt. #124) and Defendants' letter in opposition (Dkt. #126). The Court DENIES IN PART and GRANTS IN PART Plaintiff's motion.

Defendant must produce relevant investigative documents during the relevant time period which are in their possession and control. There is no need to duplicate documents that Defendants will ultimately produce by obtaining the same documents from Defendants and a third-party investigator. To the extent Plaintiff seeks to compel production of relevant documents she believes to be missing from Defendants' ongoing ESI productions, including draft complaints and third-party investigator files, Plaintiff must wait until after July 2, 2025 (by which date additional ESI is due) to raise such objections.

Defendants are hereby ordered to provide a declaration from Defendant Pan attesting to the fact that he did not use his personal email accounts for relevant business-related purposes or to discuss any issues related to this litigation. Defense counsel are further ordered to conduct targeted searches of these accounts to verify this declaration, and to attest in writing (to Plaintiffs) that they have done so.

Discovery from WeChat and text message data is limited to the five key custodians about which the parties reached a prior agreement. Therefore the Court denies Plaintiff's request to compel Defendants to search such data for four other custodians.

Lastly the Court denies as moot Plaintiff's request to compel Defendants to provide revised search terms because Defendants represent that they provided these revised search terms on June 3, 2025, the same day Plaintiff filed her letter motion to compel. The parties are advised not to raise discovery disputes with the Court until they are ripe.

The Clerk of Court is directed to terminate the pending motions at docket entries 124 and 126.

Dated:     June 11, 2025              SO ORDERED.
           New York, New York

                                      *Katherine Polk Failla*

                                      HON. KATHERINE POLK FAILLA
                                      UNITED STATES DISTRICT JUDGE